UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-CV-81585-ROSENBERG

PAMELA FORD,

    Plaintiff,

v.

ELIZABETH S. NIEMI, et al.,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

This matter is before the Court on the Plaintiff's *ex parte* Emergency Motion for Temporary Restraining Order and Preliminary Injunction at docket entry 9. Because the Motion has been filed as an emergency motion, the Court enters this order as quickly (and therefore as succinctly) as possible. The Plaintiff's Motion is denied for the four reasons delineated in **bold** below.

**First**, the Court is unpersuaded by the legal premise underpinning the Motion. The Plaintiff has filed the Motion to stop the public auction of a horse. DE 9 at 1-2. The horse is to be sold at auction because of a lien previously recorded against the horse. *Id.* The Plaintiff argues that the lien is unlawful and, as a result, she is substantially likely to succeed on the merits of her challenge against the lien.

To substantiate her contention that the lien is unlawful, the Plaintiff cites to Section 713.66 of the Florida Statutes. That section allows for liens to be filed against racehorses, polo ponies, or race dogs. The Plaintiff contends that her horse is a dressage horse—a category that is not listed

in Section 713.66 and is therefore is not subject to a lien. A dressage horse is a horse that has been trained to perform precise movements in response to signals from its rider.

The Plaintiff bears the burden of persuading the Court that she is "substantially" likely[1] to prevail in this case, but the Court's intuition and common sense is that Section 716.66 would cover dressage horses as either: (i) a subset of racehorses and polo ponies or (ii) because the Section covers all manner of professional and/or sporting horses, such as the dressage horse in this case. But even if the Court's intuition and employment of common sense is wrong, it is incumbent upon the Plaintiff to persuade the Court that her interpretation of Section 716.66 is the substantially likely, correct interpretation; it is incumbent upon the Plaintiff to provide legal authority in support of her proposition. This she has not done; there are no citations to legal authority[2] on this topic in her Motion, and the Court is not persuaded.

**Second**, the Plaintiff challenges the amount of the lien on her horse, alleging that it is "inflated," but the precise amount of what the lien *should* be is a fact-intensive matter not suitable for *ex parte* relief. DE 6 at 4. Relatedly, although the Plaintiff's evidence includes a sworn statement that the horse has special value to her,[3] the Plaintiff's evidence is insufficient to persuade the Court that the Plaintiff has shown a substantial likelihood that there should be no lien (and therefore no auction) whatsoever. Instead, the evidence before the Court tends to show that the Plaintiff and the Defendants have a long history of: (i) the Plaintiff owing the Defendants money

---

[1] *E.g.*, *Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011).
[2] If there is no legal authority on dressage horses whatsoever, this Court questions whether it—as opposed to a Florida state court—is the proper forum for a first-impression interpretation of Section 716.66. At a minimum, it falls on the Plaintiff to explain why it is appropriate for this Court to decide the matter in lieu of a state court.
[3] Even though the Plaintiff attests that the horse has special value to her, the Court can discern no legal argument in the Motion that the market value of the horse would nonetheless be insufficient to satisfy the Plaintiff's damages in this case. Stated differently, the Plaintiff makes no non-conclusory argument (and provides no legal authority) that because of her special affection for the horse there is no amount of money that could compensate her for the loss of the horse.

for the care of her horses, (ii) the Plaintiff making (sometimes partial) payments on the amount sought by the Defendants over a period of time, and (iii) the Plaintiff selling other horses to reduce her monthly horse expenses and generate sufficient funds to pay the Defendants. DE 9-2.

By arguing that the amount of money that the Plaintiff should owe the Defendants is lower than the amount of the lien, the Plaintiff underscores the appropriateness of a legal remedy in this case—that the operative question is the proper quantification of the lien. But to be entitled to an injunction, the Plaintiff must show that that there is ***no*** legal remedy—that there is no amount of money—that could compensate her in this case. *Grizzle*, 634 F.3d at 1320. No non-conclusory argument on this point is made in the Plaintiff's Motion, and the Court is not persuaded.

**Third**, for an injunction to issue, the Court must be satisfied that the Plaintiff has provided proper security such that if the Defendants are harmed as a result of the injunction and delayed sale of the horse, the Defendants may be adequately compensated. Fed. R. Civ. P. 65(c). Here, some manner of security would seem appropriate to the Court, given: (i) the horse, as biological property, could degrade in value or be damaged (or even die) during the pendency of a stay; (ii) the horse is mobile property that could be removed from the jurisdiction of the Court during a stay; (iii) the Plaintiff does not appear to contest that the Defendant is entitled to no compensation for past services whatsoever—merely the precise amount of that compensation; and (iv) the Defendants would presumably be entitled to interest on the amount of money that they would have received via public auction. Simply stated, the Court needs more information to determine whether the Plaintiff should post security in this case and how much that security should be, but the Plaintiff's Motion is completely silent on this topic, and the Court is not persuaded.

**Fourth**, the Plaintiff has not facially alleged federal jurisdiction in this matter, and the Court declines to enter any injunction in a case where jurisdiction has not at least been facially alleged. The Plaintiff has named as a Defendant in this case East Coast Sport Horses, LLC, contending that there is federal diversity jurisdiction and that she is a citizen of a different state than East Coast Sport Horses. *See* 28 U.S.C. § 1332. The Plaintiff alleges that she is a citizen of Connecticut. DE 6 at 2. A limited liability company is a citizen of the state of which each of its members are citizens. *E.g.*, *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013). The Plaintiff does not allege the citizenship of the members of East Coast Sport Horses. As a result, the Plaintiff has not facially alleged federal diversity jurisdiction in this case.

The Court does not doubt the sincerity of the Plaintiff's attachment to her horse, but the Court must abide by the standard for injunctions and the Federal Rules of Civil Procedure. Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [DE 9] is **DENIED**. The Plaintiff shall file an amended complaint that facially alleges diversity jurisdiction within three days of the date of this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 2nd day of January, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record